Frank **GONSALVES**, Plaintiff,

v.

**J.F. FREDERICKS TOOL CO., INC.,** Defendant.

No. 3–94–CV–1335(WWE).

United States District Court, D. Connecticut.

March 12, 1997.

James L. Kestell, Hartford, CT, for plaintiff.

Siegel, O'Connor, Schiff and Zangari by Richard O'Connor, George Kelly, Jr., Dana Shaw MacKinnon, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Frank Gonsalves, has brought suit against defendant, J.F. Fredericks Tool Co., Inc., alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (Count One) and Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e–2000e–16 (Counts Two and Three). Plaintiff also brings these claims under Connecticut law (Counts Four and Five).

Pending before the court is defendant's motion for summary judgment on each count. For the reasons set forth below, defendant's motion will be denied.

### Background

Unless otherwise indicated, the following facts are undisputed. Defendant is in the business of manufacturing products for the aerospace industry. Plaintiff, an African American, was hired by defendant in October 1985 as a final inspector. On or about January 1988, defendant asked plaintiff to temporarily fill in as the gauge crib attendant/gauge technician ("gauge technician"), a position held at the time by Todd Bailey. Shortly thereafter, defendant permanently assigned plaintiff to the position of gauge technician when Bailey was moved to a position in process inspection. The duties of gauge technician include calibrating the gauges, filling special gauging requests, devising and planning gauge calibration and repair work, and ordering new gauging when necessary. Plaintiff reported to Frank DiBennedetto, Chief Inspector and Donald Renehan, Quality Control Manager.

In 1988, plaintiff was diagnosed with diabetes and hypertension and had to miss work on several occasions to keep appointments with doctors. At the time, plaintiff informed DiBennedetto of his condition and the reasons for his absences from work.

In January, 1989, defendant implemented a "total quality management" ("TQM") production process requiring work to be prioritized in the order of urgency and completion dates. Plaintiff claims that as a result of this change, he was required to do more frequent set ups of defendant's machinery as well as more frequent changes in the calibration of the gauges of the machinery. Plaintiff claims that the demands placed upon him because of this change dramatically increased his workload and that he was unable to per-

form the rest of his duties, including the routine shop calibrations which needed to be done monthly. He also avers that he requested assistance from DiBennedetto in completing these functions.

On March 2, 1992, an out-of-date gauge was found on the shop floor and plaintiff was given a verbal warning to keep the gauges up to date. Plaintiff claims that on May 21, 1992, he was subjected to several racial comments by Bailey after which plaintiff became dizzy and lightheaded. He was thereafter taken to Bristol Hospital Emergency Room. Plaintiff also contends that after that date, a memo was passed around the office referring to plaintiff as a "porch monkey," which memo he brought to DiBennedetto and Renehan's attention.

Plaintiff asserts that on or about August 14, 1992, he notified Renehan about his diabetes and high blood pressure by submitting a note from his doctor, Seymour Byer, stating that he was being treated for a blood pressure condition associated with diabetes mellitus and that "moderate to severe emotional stress at work" could "influence his condition adversely." Plaintiff claims that Renehan acknowledged that the requirements of plaintiff's job were more than one employee could handle but made no changes to his responsibilities and no attempt to provide him with more assistance.

On September 18, 1992, following an audit by one of their customers which indicated that several gauges were out of date, Renehan gave plaintiff a written warning of substandard work and informed him that his performance would be further monitored. This warning was followed by two additional warnings on November 13, 1992 and November 25, 1992. The November 25th notice warned plaintiff that if his performance did not improve by December 11, 1992, he would be terminated for unacceptable job performance. On December 10, 1992, an out of date gauge was found and plaintiff was terminated. After plaintiff's termination, David Kitson, a white male, was hired for the position of gauge technician.

Plaintiff contends that from 1989 up to his termination in 1992, he sought various promotions and/or transfers by applying for the following positions: data entry, computer programmer, expediter, TQM coordinator or facilitator and CNC operator. The position of expediter was given to Clark Pelletier, a white male.

The parties agree that there are few promotional opportunities available at the company. If a position becomes open, management may approach employees they believe qualified for the position. If no internal candidate is qualified, the company advertises in local newspapers.

### Discussion

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Intern. Group, Inc. v. London American Intern. Corp. Ltd.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The moving party may also fulfill its burden by showing that there is insufficient evidence in the record to support the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

The Second Circuit has repeatedly cautioned courts about granting summary judgment in favor of an employer in an employment discrimination case where the employer's intent is at issue. *See Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996); *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir.1994). "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be

carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo,* 22 F.3d at 1223–24.

### I. *ADA claim*

Plaintiff alleges that defendant violated the ADA by failing to accommodate plaintiff's diabetes and hypertension; by refusing to assign some of plaintiff's job duties knowing that the job requirements were more than one person could handle; by failing to make reasonable accommodations to plaintiff; and by discharging him because of his diabetes and hypertension.

Defendant argues that summary judgment is appropriate because 1) plaintiff's allegations that defendant failed to provide him with reasonable accommodations refer to events that occurred before July 26, 1992, the effective date of the ADA, and thus cannot provide a basis for relief, and 2) plaintiff is not a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12111. The court will address these arguments *seriatim.*

### 1) *Pre-Effective Date Conduct*

Defendant argues that plaintiff's claims regarding defendant's alleged failure to reasonably accommodate his disability reference conduct that occurred prior to the ADA's effective date and is not actionable. The ADA became effective on July 26, 1992 and is not retroactive in application. *Smith v. United Parcel Service of America, Inc.,* 65 F.3d 266, 266 (2d Cir.1995). As the U.S. Supreme Court in *Bazemore v. Friday,* stated in the context of Title VII:

> A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, it is liable under that statute. While recovery may not be permitted for pre-[effective date] acts of discrimination, to the extent that this discrimination was perpetuated after [the effective date], liability may be imposed.

478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986). From *Bazemore,* it is evident that a plaintiff may not receive compensatory damages for pre-ADA events. While that conduct cannot serve as the basis for relief, it may be probative regarding defendant's knowledge of plaintiff's condition as it existed. *See Morton v. GTE North Inc.,* 922 F.Supp. 1169, 1176 (N.D.Tex.1996) (pre-ADA acts are not compensable but may be relevant).

Here, plaintiff claims that although defendant was aware of plaintiff's condition, and particularly that plaintiff required emergency room care, defendant refused to make any changes in plaintiff's job responsibilities. Plaintiff submits his affidavit and deposition testimony in which he states that he made requests for reasonable accommodations both before and after the ADA's effective date. He also submits a copy of the note from Dr. Byer dated August 14, 1992 which refers to plaintiff's high blood pressure and diabetes and states that "moderate to severe emotional stress" may adversely affect these conditions.

Applying the reasoning in *Bazemore,* plaintiff's claims relating to discriminatory conduct occurring on or after July 26, 1992 can serve as a basis for liability. Plaintiff is not entitled, however, to any compensatory damages for acts occurring prior to the ADA's effective date. While not properly the basis for relief, these acts may have some "probative force" at trial. *Morton,* 922 F.Supp. at 1176 (quoting *Hazelwood School District et al. v. United States,* 433 U.S. 299, 310 n. 15, 97 S.Ct. 2736, 2743 n. 15, 53 L.Ed.2d 768 (1977).

### 2) *Qualified Individual with a Disability*

The ADA was enacted to prevent discrimination against a qualified individual with a disability with regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12101(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." 42 U.S.C. § 12112(b)(5)(A).

Plaintiff's claims for discrimination must be evaluated under the familiar burden-shifting analysis set forth in *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). Under this framework, the plaintiff bears the threshold burden of establishing a *prima facie* case of discrimination. Once a *prima facie* case is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its challenged action. Lastly, if the employer meets this burden, plaintiff must demonstrate that the reasons proffered by defendant were merely a pretext for discrimination. *McDonnell,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

To establish a *prima facie* case of discrimination under the ADA, plaintiff must demonstrate: 1) that he is an individual with a disability; 2) that he is otherwise qualified for the position; and 3) that his discharge occurred under circumstances giving rise to an inference of unlawful discrimination. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). The burden at the *prima facie* stage is *de minimis. Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995).

There is no dispute that plaintiff was discharged. At issue is whether he is disabled, otherwise qualified for the position of gauge technician and terminated under circumstances that give rise to an inference of discrimination based on his disability.

Under the ADA, the definition of a disability includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). The phrase "substantially limits" comprises either the 1) inability to perform a major life activity or 2) a severe restriction on the ability to perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). Major life activities include but are not limited to "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

▮ Defendant argues that no evidence exists in the present record demonstrating a physical or mental condition that substantially limited one or more of plaintiff's major life activities while plaintiff was employed by defendant. Plaintiff responds by proffering his affidavit and deposition testimony which state that while employed by defendant his diabetes caused him to experience trouble eating and sleeping, as well as dizziness and blurry vision when his blood sugar level became high. This evidence also shows that plaintiff experienced dizzy spells, headaches and nervousness as a result of his hypertension.

Courts have acknowledged that diabetes may substantially limit a major life activity. *See e.g., Turco v. Hoechst Celanese Chemical Group, Inc.,* 101 F.3d 1090, 1093 (5th Cir. 1996); *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813–14 (N.D.Tex.1994); and *Rosenblum v. Colorado Dept. of Health,* 878 F.Supp. 1404, 1407 (D.Colo.1994) and cases cited therein. Here, there is no dispute that plaintiff is a diabetic. The evidence that, during all relevant times, he had difficulty sleeping and eating, two major life activities, is sufficient to permit a finding that his diabetes substantially limited a major life activity. *See Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813–14 (N.D.Tex.1994) (plaintiff's affidavit detailing effects of diabetes on eating and sleeping sufficient to create a genuine issue of material fact).

As to plaintiff's high blood pressure, the court likewise finds that genuine issues of material fact exist as to whether this condition contributed to plaintiff's difficulties involving sleeping and eating. Several courts have found that high blood pressure alone does not constitute a disability. *Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 92–93 (5th Cir. 1996) (plaintiff failed to present evidence that high blood pressure limited any major life activity); *Deghand v. Wal–Mart Stores, Inc.,* 926 F.Supp. 1002, 1013 (D.Kan.1996) (same). Here, plaintiff's complaints of dizziness, nervousness and headaches would be insufficient by themselves to constitute a disability. However, unlike the above-cited cases, plaintiff has submitted Dr. Byer's note which states that his high blood pressure condition was associated with his diabetes which, viewing the evidence most favorably to plaintiff, creates at least a genuine issue of material fact as to whether this condition contributed

to plaintiff's difficulty as to sleeping or eating.

◾ Defendant contends next that even assuming that plaintiff has a disability that substantially limits his activities, he is not "qualified" for the position of gauge technician. A qualified individual with a disability is someone with a disability, who with or without accommodation, can perform the essential functions of the job that individual holds. 42 U.S.C. § 12111(8). This person must have the requisite skill, education, and experience requirements for the job. 29 C.F.R. § 1630.2(m). The essential functions of the job are those that are fundamental to the position, not marginal. 29 C.F.R. § 1630.2(n)(1).

Defendant points to the record of verbal and written warnings regarding plaintiff's failure to perform the job successfully, specifically, making sure the gauges were up to date. It is undisputed, however, that plaintiff, after filling in temporarily as gauge technician, was promoted and continued in this position for 3 years. There is no evidence in the record that plaintiff received a verbal or written warning of substandard performance prior to March, 1992. Plaintiff claims that after the institution of TQM he was unable to perform all of his job functions. However, the fact that plaintiff worked in this position for this length of time without warning creates a genuine issue as to whether he was able to perform the essential, as opposed to marginal, functions of his job. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 523–24 (11th Cir.1996).

Even if plaintiff was unable to perform the essential functions of his job, genuine issues of material fact exist as to whether he could have performed them with reasonable accommodation. While the ADA does not define the term "reasonable accommodation," it may include "job restructuring, part-time or modified work schedules and reassignment to a vacant position." 29 C.F.R. § 1630.2(*o*)(2)(ii).

◾ Plaintiff claims that he repeatedly requested assistance with his job duties and that he tried to secure a transfer to a different position. The affidavits of David Orschel, plant manager for defendant at the

time and Clark Pelletier, an expediter, state that plaintiff was a good employee and that the workload he was given was too much for one person to possibly complete. Although the ADA does not require employers to eliminate one of the essential functions of a job, *Hogue v. MQS Inspection, Inc.*, 875 F.Supp. 714, 722 (D.Colo.1995), it is an issue of fact in this case as to whether providing plaintiff with assistance in performing the marginal functions of his job would have enabled him to accomplish those essential to the position. *See Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 140 (2d Cir.1995) ("providing an assistant to help with a job may be an accommodation that does not remove an essential function of the job from the disabled employee").

Also, genuine issues of material fact exist as to whether plaintiff tried to transfer. Although it is unclear from the record specifically when plaintiff attempted to transfer, plaintiff's deposition testimony reveals that he learned of the positions of data entry, computer programmer, expediter, TQM coordinator and CNC operator by word of mouth and that he asked about or discussed these potential positions with his supervisors. Defendant claims that either these positions never existed or were not established as new positions, but simply assigned to existing employees as expanded responsibilities. Assuming that plaintiff attempted and was denied these accommodations after the effective date of the ADA, and given the undisputed fact that defendant did not have a formal application process, the issue of whether these positions were available and whether plaintiff applied for them rests on credibility determinations left to the factfinder at trial and not the court on a summary judgment motion.

◾ Defendant also argues that, assuming that plaintiff had a disability and was qualified, at no time did he specify that he needed assistance on the job because of his medical conditions but merely complained that the job was too much work for one individual and that he needed help.

◾ Generally, it is left to the employee with the disability to inform the employer

that an accommodation is needed. *Miller v. National Cas. Co.*, 61 F.3d 627, 629–30 (8th Cir.1995). Employers are not required to accommodate needs they do not know exist. The ADA, however, does not require an employee to speak any magic words before he or she is subject to its protection, and the employee need not mention the ADA or even the term "accommodation." *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D.Or.1994).

Plaintiff claims in his affidavit that he informed DiBennedetto of the reasons for his frequent visits to doctors. Also, plaintiff's affidavit and deposition claim that he verbally informed Renehan about his illness and gave him a note from his doctor that significant stress on the job could exacerbate his condition. In his affidavit, DiBennedetto states that he knew that plaintiff had diabetes but did not know about his hypertension. He also avers that plaintiff never stated that he could not perform his job duties due to these conditions. Additionally, defendant denies ever having received a doctor's note from plaintiff regarding his condition. Again, this presents credibility determinations left to the factfinder.

■ The remaining issue on plaintiff's *prima facie* case is whether plaintiff's discharge occurred under circumstances giving rise to an inference of unlawful discrimination. The court finds that plaintiff has proffered sufficient evidence to satisfy this requirement. First, plaintiff argues that the job duties of gauge technician were unrealistically high and impossible for one person to handle. The affidavits of Orschel and Pelletier support this contention. *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987) (unreasonable expectations of employer present strong evidence that employee was discharged on the account of handicap).

Second, several months after plaintiff was taken to the Bristol Hospital Emergency Room and presented Dr. Byer's note, he received his first written warning that his performance was substandard. While defendant proffers that this written warning was based on a complaint by a customer after an audit that the gauges were out of date, the timing of these events satisfies plaintiff's *de minimis* burden. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991) (*prima facie* case of discrimination may be established "indirectly by showing that the protected activity was followed closely by discriminatory treatment").

In the face of plaintiff's *prima facie* showing, defendant has articulated and proffered evidence that plaintiff was discharged because of substandard performance and not for a discriminatory reason. Among other things, defendant submits the affidavits of DiBennedetto and Roger Fredericks, the owner of the company, which state that plaintiff failed to perform the duties of his job adequately after repeated verbal and written warnings.

■ Now plaintiff must demonstrate pretext. At the summary judgment stage, a plaintiff must show that a material issue of fact exists as to whether the employer's asserted reason for the employment action is false and that the action was more likely than not the result of a discriminatory motive. *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994). To fulfill this burden, a plaintiff may rely on the evidence supporting his *prima facie* case without more. *Chambers v. TRM Copy Centers, Corp.*, 43 F.3d 29, 38 (2d Cir.1994).

Here, the Orschel and Pelletier affidavits referring to plaintiff as a "good employee" create an issue of fact as to whether defendant's reason for terminating plaintiff is worthy of belief. Likewise, the timing of the warnings creates an issue as to whether disability was a motivating factor in plaintiff's termination.

## II. *Title VII claim*

Plaintiff's claims under Title VII are twofold: that he was denied opportunities for promotion and/or transfer and that he was terminated based on his race. Defendant argues that summary judgment is appropriate because as a matter of law plaintiff cannot meet his burden under the *McDonnell Douglas* framework.

■ To establish a *prima facie* case of termination based on race, plaintiff must show that 1) he is a member of a protected

group in that he is a black male; 2) he suffered an unfavorable employment decision; and 3) he was replaced by someone outside the protected class. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). It is undisputed that plaintiff is a member of the protected class, that he was terminated and replaced by a nonmember of the protected class. Additionally, plaintiff presents evidence that he was subjected to racial comments and a memo by co-workers, and that management knew of these incidences and did nothing to prevent or stop them. *See Ostrowski v. Atlantic Mut. Ins. Companies,* 968 F.2d 171, 182 (2d Cir.1992) (stray remarks in the workplace by persons who are not involved in the pertinent decision making process may suffice to present a *prima facie* case). Thus, plaintiff has met his *prima facie* burden on his claim relating to termination.

 To establish a *prima facie* case of failure to promote, plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he applied for promotional positions; (3) that he was qualified for those positions; and (4) that these positions were filled by someone outside of the protected class. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996). It is undisputed that the position of expediter was given to Orschel, a white male. At issue is whether plaintiff ever applied for any promotions, including expediter, and if so, whether plaintiff was qualified for those positions. As discussed above, on the one hand is plaintiff's evidence that he learned of several positions by word of mouth and discussed these opportunities with his supervisors. On the other hand, defendant claims that these positions never existed or were not established as new positions. In light of these disputed genuine issues of material fact, plaintiff has met his *prima facie* burden with respect to his claim for failure to promote.

Given defendant's proffered legitimate, nondiscriminatory reason of substandard performance, plaintiff must show pretext. Plaintiff submits defendant's Equal Employment Opportunity—Employer Information Reports from 1989 to 1992 showing that plaintiff was the only African–American employed by defendant during those years. While this evidence, by itself, would not support a showing of pretext, viewed cumulatively with the affidavits of Pelletier and Orschel regarding plaintiff's good performance and the evidence that plaintiff was allegedly subjected to racial slurs to which management did not respond, plaintiff has satisfied his burden.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment [# 12] is DENIED.