Christine Ann NOWAK, Plaintiff,

v.

EGW HOME CARE, INC., Donald Wach and Martin Jackson, Defendants.

No. 99–CV–345A.

United States District Court, W.D. New York.

Jan. 4, 2000.

Jonathan G. Johnsen, Harris, Beach & Wilcox, Hamburg, NY, Scott D. Piper, Harris, Beach & Wilcox, Rochester, NY, for Christine Ann Nowak.

Judy Sager Hernandez, Damon & Morey, Buffalo, NY, Melida G. Disare, Damon & Morey, Buffalo, NY, James N. Schmit, Damon & Morey, Buffalo, NY, for EGW Home Care, Inc., Donald Wach, Martin Jackson.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on July 7, 1999. On December 8, 1999, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendants' motions to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure should be granted to the extent that the motions seek dismissal of plaintiff's sixth, seventh, eighth and ninth causes of action, and denied in all other respects.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants' motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are granted to the extent that they seek dismissal of plaintiff's sixth, seventh, eighth and ninth causes of action, and denied in all other respects.

The case is referred back to Magistrate Judge Heckman for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report on dispositive motions. Defendants have filed two motions (Items 6 and 16) to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the following reasons, the motions should be granted in part and denied in part.

## BACKGROUND

On May 18, 1999, plaintiff Christine Ann Nowak filed the complaint in this case seeking damages for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and various state law provisions. According to the allegations in the complaint, plaintiff was employed by defendant EGW Home Care, Inc., as Director of Nursing/Nursing Supervisor beginning in December 1994, and was promoted to Director of Patient Services in June 1996. In September 1996, defendant Donald Wach (the owner of EGW) hired defendant Martin Jackson as Assistant Administrator. Plaintiff alleges that, starting in or

about September 1997, Mr. Jackson subjected her to "uninvited and unwelcome, lewd and suggestive comments because of her sex" (Item 1, ¶ 13). She claims that this "continuous harassment ... unreasonably interfered with her ability to perform her job and created an intimidating, hostile and offensive working environment" (*id.*, ¶ 21), and that she complained to Mr. Wach about Mr. Jackson's conduct, to no avail.

Plaintiff also claims that in late January 1988 she experienced a nosebleed while Mr. Jackson was yelling at her, and that soon thereafter she "was placed on disability leave by her doctor because of the stress unreasonably [caused] by" defendants (*id.*, ¶ 27). She returned to work on March 3, 1998, at which time she was informed by both Mr. Wach and Mr. Jackson that the position of Director of Patient Services had been eliminated, and that she would be ineligible for any salary increase in her new position as Director of Nursing. She worked for about two weeks, and "was again placed on disability leave by her physician" (*id.*, ¶ 36). Shortly thereafter she met again with Mr. Wach on two occasions. At the second meeting Mr. Wach asked for her resignation. She informed him that she was on disability leave, and she refused to resign (*id.*, ¶¶ 37–42).

On March 27, 1998, plaintiff received a letter from Mr. Wach informing her that she had been terminated from her employment at EGW effective March 20, 1998. Plaintiff alleges in the complaint that on May 12, 1998, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which she claimed that she was discriminated against because of her sex and her disability (*see* Item 6, Ex. A). On February 26, 1999, plaintiff received a "Notice of Right to Sue" letter from the EEOC informing her that its processing of her charge had been terminated because it was unlikely that the processing would be completed within 180 days from filing (*id.*, Ex. B).

In her complaint in this action, plaintiff sets forth the following claims for relief:

1. Discriminatory demotion and discharge because of her sex, in violation of Title VII.

2. Hostile work environment, in violation of Title VII.

3. Failure of EGW and Donald Wach to adequately supervise Martin Jackson, in violation of New York Executive Law § 296.

4. Retaliatory discipline, demotion and discharge, in violation of Title VII.

5. Retaliatory discipline, demotion and discharge, in violation of New York Executive Law.

6. Discriminatory demotion and discharge because of her disability, in violation of the ADA.

7. Discriminatory demotion and discharge because of her disability, in violation of the New York Executive Law.

8. Discharge in violation of the FMLA.

9. Defamation.

10. Discharge in violation of New York Workers' Compensation Law § 120.

On June 30, 1999, defendants filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the first, second, third, fourth and fifth causes of action against the individual defendants, and the sixth, seventh, eighth, ninth and tenth causes of action in their entirety, for failure to state claims upon which relief can be granted. Defendants also moved to dismiss the complaint to the extent it seeks punitive damages under the New York Human Rights Law. In response to defendants' motion, plaintiff agreed to withdraw her Title VII and ADA claims against individual defendants Wach and Jackson, as well as her claims under the New York Workers' Compensation Law and her claims for punitive damages under New York law (*see* Item 12, ¶¶ 7–9).

On October 25, 1999, defendants filed a supplemental motion to dismiss the first, second and third causes of action in their entirety on the grounds that the court lacks subject matter jurisdiction over defendants' conduct alleged to have occurred prior to January 16, 1998—*i.e.,* within 300 days of November 12, 1998, which is the actual date on which plaintiff filed her complaint with the EEOC (not May 12, 1998, as alleged in the complaint), and that the conduct alleged to have occurred on or after January 16, 1998 does not support these causes of action as a matter of law.

Consequently, the court will construe the grounds for defendants' motion to dismiss be as follows:

I. Plaintiff's Title VII claims based on conduct alleged to have occurred prior to January 16, 1998 are time-barred.

II. Failure to state claims for sex discrimination or hostile environment upon which relief can be granted under Title VII based on conduct alleged to have occurred on or after January 16, 1998.

III. Failure to state a claim for sex discrimination upon which relief can be granted under the New York Human Rights Law.

IV. Failure to state a claim for disability discrimination upon which relief can be granted under either the ADA or New York law.

V. Failure to state a claim for violation of the FMLA.

VI. Failure to state a claim for defamation.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Timeliness of Title VII Claims.

Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action, unless the claimant initially instituted proceedings with a state or local equal employment agency, in which case the claimant has 300 days to file her charge with the EEOC. See 42 U.S.C. § 2000e–5(e)(1); *Tewksbury v. Ottaway Newspapers,* 192 F.3d 322, 325 (2d Cir. 1999); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–33 (2d Cir.1992). The parties do not dispute that plaintiff had 300 days to file her administrative charge in this case.

■ The statutory 300–day time limit is analogous to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996). Thus, only events that occurred during the 300–day period prior to filing— that is, on or after January 16, 1998—are actionable under Title VII, unless the period has somehow been equitably tolled or extended. *Van Zant v. KLM Royal Dutch Airlines, supra,* 80 F.3d at 712–13.

■ Courts in this circuit have recognized that Title VII's 300–day limitations period can be extended by application of the "continuing violation" exception. Under this exception, a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been time-barred. *See, e.g., Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Cook v. Pan Am. World Airways,* 771 F.2d 635, 646 (2d Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986).

■ Application of the continuing violation exception is usually reserved for cases in which there is evidence of specific discriminatory practices or mechanisms, such as the repeated use of discriminatory

seniority lists or employment tests. *See Lambert v. Genesee Hosp., supra,* 10 F.3d at 53 (citing cases). Discrete incidents of discrimination that are unrelated to an identifiable policy or practice, on the other hand, will not ordinarily amount to a continuing violation. *Lightfoot v. Union Carbide Corp., supra,* 110 F.3d at 907; *Van Zant v. KLM Royal Dutch Airlines, supra,* 80 F.3d at 713. However, even in the absence of a specific discriminatory policy or mechanism, courts in the Second Circuit have applied the continuing violation exception "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994); *see also Lightfoot, supra; Simmons v. American Telephone And Telegraph, Inc.,* 1998 WL 751659, at *5 (S.D.N.Y. October 28, 1998), *aff'd,* 182 F.3d 901, 1999 WL 464983 (2d Cir.1999). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant, supra,* 80 F.3d at 713.

In this case, plaintiff alleges that defendants "engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her sex ...," in violation of Title VII (Item 1, ¶ 47). Plaintiff also alleges that defendants' discriminatory practices began "in or about September of 1997" (*id.,* ¶¶ 13, 19). As recognized in *Lightfoot,* while these conclusory allegations alone would not be enough for plaintiff to avoid summary judgment, they are "sufficient to withstand a challenge for failure to state a claim" under Rule 12(b). *Lightfoot v. Union Carbide Corp., supra,* 110 F.3d at 907; *see also PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1197 (2d Cir. 1996) (court may not grant Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief").

Accordingly, defendants' motion should be denied to the extent it seeks dismissal of plaintiff's Title VII claims based on conduct occurring prior to January 16, 1998.

## II. Title VII Sex Discrimination and Hostile Environment.

Defendants also contend that the allegations contained in the complaint relating to conduct occurring on or after January 16, 1998 fail to state a claim upon which relief can be granted under Title VII based on either a "sex discrimination" or "hostile work environment" theory of recovery. As discussed above, because the complaint at least minimally alleges that the acts of defendants Jackson and Wach outside of the 300-day limitations period were committed in furtherance of a discriminatory policy, the court must consider those allegations in ruling on the motion to dismiss.

In order to survive a Rule 12(b)(6) motion to dismiss a Title VII sex discrimination claim, the complaint must contain *prima facie* allegations that the plaintiff was a member of a protected class, was qualified for her position, was discharged, and the discharge occurred in circumstances giving rise to an inference of discrimination. *See O'Malley v. Aids Institute,* 1996 WL 447748, at * 4 (S.D.N.Y. August 7, 1996) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Defendants concede that plaintiff has met her minimal *prima facie* pleading burden with respect to membership in a protected class, qualification for her position, and discharge, but contend that plaintiff has failed to allege facts giving rise to a reasonable inference of discriminatory intent.

Because direct evidence of discriminatory intent is rarely available, the courts recognize that Title VII plaintiffs are usually constrained to rely on circumstantial evidence to prove their cases. *See,*

e.g., *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (citing cases); *O'Malley v. AIDS Institute, supra*, 1996 WL 447748, at *4. Circumstances contributing to a permissible inference of discriminatory intent may include a supervisor's invidious comments about the plaintiff or others in her protected group, *see, e.g., Ostrowski v. Atlantic Mutual Insurance Companies*, 968 F.2d 171, 182 (2d Cir. 1992); *Dundas v. Convalescent Hosp. for Children*, 1995 WL 813721, at *4 (W.D.N.Y. March 9, 1995), criticism of the plaintiff's job performance in degrading terms, *see, e.g., Lopez v. S.B. Thomas*, 831 F.2d 1184, 1189 (2d Cir.1987), or the sequence of events leading to the plaintiff's discharge. *See, e.g., Ostrowski, supra* at 183; *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998) (employer may be liable for harassment by a plaintiff's supervisor if employer "knew or should have known about the conduct and failed to stop it").

■ In this case, plaintiff alleges that Mr. Jackson made improper remarks to plaintiff on several occasions, and that plaintiff complained to Mr. Wach to no avail (*see, e.g.,* Item 1, ¶¶ 13–20, 23, 38). These allegations are sufficient to give rise at the pleading stage to an inference of discriminatory intent so as to withstand defendants' motion to dismiss plaintiff's Title VII sex discrimination claim.

■ Defendants also move to dismiss plaintiff's hostile work environment claim. A hostile environment under Title VII is a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993): *see also Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (Title VII affords employees the right to work in an environment "free from dis-

criminatory intimidation, ridicule, and insult"). To prevail on a hostile environment claim, a plaintiff must plead and prove (1) that she is a member of a protected group, (2) that she was the subject of harassment or unwelcome advances, (3) that the harassment was based upon her membership in the protected class, and (4) that the harassment affected a term, condition, or privilege of employment. *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1042 (2d Cir.1993) (citing *Meritor, supra*, 477 U.S. at 63–69, 106 S.Ct. 2399); *see also Salvatore v. KLM Royal Dutch Airlines*, 1999 WL 796172, at *9 (S.D.N.Y. September 30, 1999). A plaintiff must also demonstrate that "the supervisor's actions should be imputed to the employer." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992) (quoted in *Cosgrove, supra*); *see also Gallagher v. Delaney*, 139 F.3d 338, 346–47 (2d Cir.1998) (defendant's conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace).

■ In assessing a claim of hostile environment under Title VII, the court must be particularly concerned with "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc., supra*, 510 U.S. at 23, 114 S.Ct. 367. As the Supreme Court has reminded, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* at 21, 114 S.Ct. 367; *see also Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997).

■ In this case, accepting as true the factual allegations stated in the complaint and drawing all reasonable inferences in

favor of plaintiff, *PaineWebber Inc. v. Bybyk, supra,* 81 F.3d at 1197, I find that plaintiff has stated a hostile work environment claim upon which relief can be granted under Title VII. Plaintiff alleges that Mr. Jackson's "continuous harassment" in the form of derogatory sexual comments made in the presence of other employees "unreasonably interfered with her ability to perform her job and created an intimidating, hostile and offensive working environment" (Item 1, ¶ 21), and that when she complained to Mr. Wach about Mr. Jackson's conduct, "she was demoted, told she would never receive another pay raise, and eventually terminated" (*id.,* ¶ 53). In light of the plaintiff's minimal *prima facie* pleading burden under the legal standards discussed above, it cannot be said to be beyond doubt that plaintiff has alleged no facts to support her hostile work environment claim.

Accordingly, defendants' motion to dismiss should be denied to the extent it seeks dismissal of plaintiff's claims of sex discrimination and hostile work environment in violation of Title VII.

### III. New York Human Rights Law.

In her third claim for relief, plaintiff alleges that defendants EGW and Donald Wach had knowledge of Mr. Jackson's offensive conduct toward plaintiff but failed to take any corrective action, in violation of New York Human Rights Law—specifically, N.Y. Executive Law § 296. Defendants contend that this claim must be dismissed because plaintiff has failed to allege individual liability under the Human Rights Law in accordance with the standards set forth by the New York Court of Appeals in *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984).

In *Patrowich,* the court held that an employee is not individually subject to suit under § 296 of the Human Rights Law as an employer "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions

made by others." *Id.* at 542, 483 N.Y.S.2d 659, 473 N.E.2d 11. However, as noted by the Second Circuit in *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995), several courts have distinguished *Patrowich* on the basis of language contained in § 296(6) of the Human Rights Law, which states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec.Law § 296(6). Those courts—including the Second Circuit in *Tomka*—have held that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the Human Rights Law. *See Tomka v. Seiler Corp., supra* (citing *Poulsen v. City of North Tonawanda, N.Y.,* 811 F.Supp. 884, 900 (W.D.N.Y.1993), *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1180–81 (S.D.N.Y.1992), *and Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135–36 (N.D.N.Y.1990)); *but see Falbaum v. Pomerantz,* 891 F.Supp. 986, 992 (S.D.N.Y. 1995) (construing "aiding and abetting" provision of HRL to exclude individuals in situations in which the parties stand within the scope of a common employment); *see also Oliver v. General Nutrition Center,* 1999 WL 435208, at *3 n. 6 (S.D.N.Y. June 25, 1999) (noting dispute over binding effect of *Tomka*'s interpretation of N.Y. Human Rights Law; following "the majority of courts in this circuit finding that *Tomka* is controlling").

In this case, plaintiff has alleged that Mr. Jackson directly participated in the conduct giving rise to her claims for sex discrimination and hostile work environment, and that Mr. Wach was made aware of Jackson's conduct but did nothing to correct it. Under the weight of authority following the Second Circuit's holding in *Tomka,* these allegations are "sufficient to satisfy § 296(6)" for the purposes of ruling on defendants' motion to dismiss the New York Human Rights Law claims against

the individual defendants. *Tomka v. Seiler Corp., supra,* 66 F.3d at 1317.

Defendants also move to dismiss plaintiff's Human Rights Law claim on the ground that the allegations contained in the complaint relating to conduct occurring on or after January 16, 1998 fail to state a claim for sex discrimination upon which relief can be granted. For the same reasons as discussed above with respect to plaintiff's Title VII claims, it is recommended that the motion be denied. *See Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177–78 (2d Cir.1996) (state law claims considered in tandem with Title VII claims because New York courts rely on federal law when determining claims under New York Human Rights Law); *Tomka, supra,* 66 F.3d at 1304 n. 4 (New York courts require same standard of proof for claims brought under the Human Rights Law as those brought under Title VII).

Accordingly, defendants' motion to dismiss should be denied to the extent it seeks dismissal of plaintiff's claims of sex discrimination and hostile work environment in violation of the New York Human Rights Law.

## IV. Disability Discrimination Under the ADA and New York Law.

In her sixth and seventh claims, plaintiff alleges that she was demoted and eventually discharged from employment because of her disability, in violation of the ADA and the New York Human Rights Law. Defendants move to dismiss these claims for failure to allege facts sufficient to support an inference that she is an individual with a disability under either statute.

In order to state a claim under the ADA, the plaintiff must adequately allege that she suffers from a "disability," defined in the statute as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *Cerrato v. Durham,* 941 F.Supp. 388, 391 (S.D.N.Y.1996). Courts generally consider three factors in determining whether a plaintiff has sufficiently alleged a disability under this definition: (1) whether the plaintiff's condition is a physical or mental impairment, (2) whether that impairment affects a "major life activity," and (3) whether the major life activity is substantially limited by the impairment. *Id.* at 391–92; *see also Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1404 (N.D.Ill.1994).

The regulations implementing the ADA provide guidelines for making these determinations. For example, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual faces a substantial limitation if she is "significantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.,* § 1630.2(j)(1)(ii), In determining whether an individual is substantially limited by an impairment, the following factors should be considered: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or resulting from the impairment. *Id.,* § 1630.2(j)(2); *see Scott v. Flaghouse, Inc.,* 980 F.Supp. 731, 734 (S.D.N.Y.1997), *aff'd in part, vacated in part,* 159 F.3d 1348 (2d Cir.1998) (table; text in Westlaw at 1998 WL 536764).

The complaint in this case is essentially devoid of allegations tracking these statutory requirements. Plaintiff alleges only that she was "placed on disability leave by

her doctor because of the stress unreasonably [caused] by [defendants]" (Item 1, ¶ 27), and that she "was demoted and fired because of her disability or because the Defendants perceived her to be disabled in violation of the [ADA]" (*id.*, ¶ 69). Plaintiff argues that these allegations are sufficient to constitute a claim that she suffered from a disability—*i.e.*, hypertension or high blood pressure—which substantially limited her ability to work.

■ I disagree. Even if the complaint can be construed to allege that plaintiff suffered from hypertension, several courts have found that this condition alone, without any evidence that it substantially affects a major life activity, does not constitute a disability under the ADA. *See, e.g., Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92–93 (5th Cir.1996) (plaintiff failed to produce evidence to show that either high blood pressure or alleged side effects from medication substantially limited his ability to work); *Murphy v. United Parcel Service, Inc.*, 946 F.Supp. 872, 881 (D.Kan.1996) (plaintiff failed to produce competent medical evidence to show that her high blood pressure substantially limited one or more of her major life activities), *aff'd*, 141 F.3d 1185, 1998 WL 105933 (10th Cir.1998), *aff'd*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Deghand v. Wal–Mart Stores, Inc.*, 926 F.Supp. 1002, 1013 (D.Kan.1996) (same); *Aucutt v. Six Flags Over Mid–America*, 869 F.Supp. 736, 744 (E.D.Mo.1994) (plaintiff failed to produce evidence that high blood pressure, unspecified angina, and coronary artery disease substantially limited one or more major life activities), *aff'd*, 85 F.3d 1311 (8th Cir. 1996).

It is recognized that these cases were decided on summary judgment after discovery, rather than on the pleadings. In fact, in *Oswalt v. Sara Lee Corp.*, the Fifth Circuit stated: "We do not imply that high blood pressure in general can never be a 'disability,' as defined by the statute. We hold only that [the plaintiff] failed to provide any evidence that his high blood pressure substantially limited a major life activity." *Oswalt v. Sara Lee Corp., supra,* 74 F.3d at 92; *see also Gonsalves v. J.F. Fredericks Tool Co., Inc.*, 964 F.Supp. 616, 621 (D.Conn.1997) (genuine issue of fact as to whether high blood pressure contributed to plaintiff's disabling condition); *Laird v. Chamber of Commerce for New Orleans and the River Region*, 1998 WL 240401, at *1 (E.D.La. May 12, 1998) (denying motion to dismiss ADA claim based on "extreme high blood pressure"); *Cerrato v. Durham, supra,* 941 F.Supp. at 393 (motion to dismiss ADA claim denied where plaintiff alleged facts from which it might be concluded that she suffered an impairment that substantially restricted her capacity to engage in work).

However, the complaint in this case contains no factual allegations from which a reasonable inference can be drawn that plaintiff's hypertension substantially affects a major life activity so as to state a claim upon which relief can be granted under the ADA. Accordingly, it is recommended that the defendants' motion to dismiss the ADA claim be granted.

■ Defendants also move to dismiss plaintiff's disability discrimination claim brought under the New York State Human Rights Law. The Second Circuit has recognized that the Human Rights Law provides a broader definition of "disability" than the ADA. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154–56 (2d Cir.1998). "Thus, an individual can be disabled under the [NYHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 706 (S.D.N.Y.1997), *quoted in Reeves, supra,* 140 F.3d at 155; *see also State Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). Indeed, all that a plaintiff is required to show in order to meet the Human Rights Law definition of "disability" is that she suffers from a

"medically diagnosable impairment." *Reeves, supra; see also Scott v. Flaghouse, Inc., supra,* 159 F.3d 1348, 1998 WL 536764, at *2–*3.

 Plaintiff's disability discrimination claim fails even under this standard. As discussed above, the complaint states only that plaintiff was "placed on disability leave by her doctor" because of stress caused by the defendants. There are no additional facts alleged from which a reasonable inference can be drawn that plaintiff suffers from a "medically diagnosable impairment" within the meaning of the Human Rights Law.

Accordingly, defendants' motion to dismiss plaintiff's disability discrimination claim brought under the Human Rights Law should be granted.

## V. FMLA.

Plaintiff also claims that defendants violated the Family and Medical Leave Act. The FMLA provides that eligible employees shall be entitled to a total of 12 workweeks of leave during any 12–month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [her] position...." 29 U.S.C. § 2612(a)(1)(D). "Serious health condition" is defined in the statute as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care in a hospital, hospice, or residential medical care facility ..." or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A), (B). Under the regulations implementing the FMLA, continuing treatment by a health care provider may include one or more of the following:

(i) A period of incapacity (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

\* \* \* \* \* \*

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2).

 Considering the complaint in this case in light of these specific statutory standards and regulatory guidelines, I find that plaintiff has failed to state a claim under the FMLA. Plaintiff alleges only that she was placed on disability leave by her doctor at some point after she experienced a nosebleed in late January 1998, that she returned from disability leave on or about March 3 for two weeks, and that she was out on disability leave again when she was terminated on March 27 (Item 1, ¶¶ 27, 31, 36, 43). These allegations are simply insufficient to raise a reasonable inference that plaintiff's health condition involved a continuing course of treatment, or otherwise caused a period of incapacity, within the meaning of the statute.

Accordingly, defendants' motion should be granted to the extent that it seeks dismissal of plaintiff's FMLA claim.

## VI. Defamation.

■ Finally, defendants move to dismiss plaintiff's defamation claim. In order to state a claim for defamation under New York law, plaintiff must allege that defendants made (1) a defamatory statement of fact (2) regarding the plaintiff (3) that was published to a third party (4) causing injury to plaintiff. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993); *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F.Supp. 1108, 1122 (W.D.N.Y. 1996). In addition, N.Y.C.P.L.R. § 3016(a) requires that, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint. . . ." Courts applying New York law regularly dismiss defamation claims which do not comply strictly with this rule at the pleading stage. *See, e.g., Kissner v. Inter–Continental Hotels, Corp.*, 1998 WL 337067, at *2 (S.D.N.Y. June 25, 1998) (citing *Monsanto v. Electronic Data Sys. Corp.*, 141 A.D.2d 514, 516, 529 N.Y.S.2d 512, 515 (2nd Dep't 1988); *Belvision, Inc. v. M & G Elecs., Inc.*, 134 A.D.2d 313, 313–14, 520 N.Y.S.2d 790, 790–91 (2nd Dep't 1987)).

■ In this case, plaintiff alleges on information and belief that defendants Wach and Jackson "made untrue statements to other persons in the Plaintiff's profession that [she] had been fired for poor performance" (Item 1, ¶ 81). She alleges that defendants caused these statements to be published (*id.,* ¶ 80), and that she suffered damages as a result (*id.,* ¶ 84). These allegations are insufficient to meet the strict pleading requirements for defamation under New York law, as set forth in the caselaw and C.P.L.R. § 3016(a). *See Curti v. Girocredit Bank,* 1994 WL 48835, at *3 (S.D.N.Y. February 14, 1994) (complaint containing "conclusory, naked" allegations regarding who made defamatory remarks, when they were made, and to whom failed to state a claim for defamation under New York law); *Reeves v. Continental Equities Corp.*, 767 F.Supp. 469, 473 (S.D.N.Y.1991) (complaint adequately set forth defamatory statements made, but inadequately identified when, by whom or to whom the statements were made).

Accordingly, defendants' motion to dismiss the defamation claim should be granted.

## *CONCLUSION*

For the foregoing reasons, it is recommended that defendants' motion to dismiss **(Item 6)** and defendants' supplemental motion to dismiss **(Item 16)** be granted to the extent that the motions seek dismissal of plaintiff's sixth, seventh, eighth and ninth causes of action, and denied in all other respects.

At oral argument before the undersigned, plaintiff's counsel requested an opportunity to amend the complaint as a matter of course under Fed.R.Civ.P. 15(a), in an effort to cure the pleading defects outlined herein and to reflect the voluntary withdrawal of plaintiff's Title VII and ADA claims against the individual defendants, her claims under the New York Workers' Compensation Law, and her claims for punitive damages under New York law. Plaintiff's amended complaint shall be filed on or before **January 10, 2000,** and defendants shall plead in response as set forth in the federal rules. This schedule is subject to adjustments, if any, ordered by the district court.